In re Charles E. MOFFITT, Debtor.

Rose Delia Gonzalez, Plaintiffs,

v.

Charles E. Moffitt, Defendants.

Nos. 98–3006, 97–33860.

United States Bankruptcy Court,
N.D. Ohio.

Jan. 31, 2000.

Louis J. Yoppolo, Toledo, OH, for Plaintiff.

William L. Swope, Findlay, OH, for Defendant.

### *MEMORANDUM OPINION AND DECISION*

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Plaintiff's Motion for Summary Judg-

ment, Memorandum in Support, and Brief in opposition to the arguments raised by the Defendant; and the Defendant's Motion for Summary Judgment, Memorandum in Support, and Response to the Plaintiff's Motion for Summary Judgment. On November 24, 1999, in accordance with Bankruptcy Rule 7056(c), the Parties presented to the Court oral arguments in support of their respective positions. The Court has now had the opportunity to review all of the arguments of counsel, exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's Motion for Summary Judgment should be GRANTED, and that the Defendant's Motion for Summary Judgment should be DENIED.

### *FACTS*

From all the evidentiary materials submitted to the Court, including the Parties' legal Memorandum, the Court finds that the following depicts an accurate portrayal of the relevant facts of this case:

On or about August 5, 1978, Charles E. Moffitt (hereinafter Defendant) and Rose Delia Gonzalez (hereinafter Plaintiff) were married. However, beginning early in the Parties' marriage, and originally unbeknownst to the Plaintiff, the Defendant began to engage in a series of extramarital affairs, with at least one of these affairs involving unprotected sex. In addition, while having these affairs, the facts presented in this case show that the Defendant continued to engage in sexual intercourse with the Plaintiff, who herself apparently remained monogamous throughout the Parties' marriage.

As a result of the Defendant's extramarital activities, the Plaintiff, especially during the last years of the Parties' marriage, became increasingly suspicious of the Defendant's activities. One such incident, which in particular raised the Plaintiff's suspicions, occurred in March of 1994, when the Plaintiff noticed warts in the

Defendant's genital area. The Defendant, however, when directly confronted with the question as to whether he was having an extramarital affair, always and repeatedly denied the existence of any extramarital activity. In fact, the Defendant, when questioned about his genital warts, simply explained that it was a "winter rash."

Upon eventually discovering the Defendant's extramarital activities, the Plaintiff made an appointment to see a gynecologist at which time it was discovered that she had contracted a venereal disease known as "HPV." [1] In response to this discovery, the Plaintiff, after the Parties' divorce, commenced an action, in diversity, against the Defendant in Federal District Court, alleging negligence and intentional/reckless infliction of emotional distress. A jury thereafter returned a verdict in favor of the Plaintiff, finding that she was entitled to One Hundred Thousand Dollars ($100,000.00) in compensatory damages on her claim of negligence, and an additional One Hundred Seventy-five Thousand Dollars ($175,000.00) in compensatory damages on her claim of intentional infliction of emotional distress. Specifically, relevant to this case regarding the latter award, was the set of interrogatories submitted to the jury which read as follows:

[QUESTION—] Do you find the Plaintiff has proved by a preponderance of the evidence that Defendant intentionally, or recklessly (with conscious disregard) caused serious emotional distress to Plaintiff

[ANSWER—] YES

[QUESTION—] What amount of emotional distress damages, if any, do you find by a preponderance of the evidence that Plaintiff has proven as a result of Defendant's intentional or reckless conduct?

[ANSWER—] $175,000.00

On appeal, the Sixth Circuit Court of Appeals upheld the jury's verdict, stating:

The record contains ample evidence that [the Defendant] admitted to having unprotected sex with [the Plaintiff] and others, knew of the risks of transmitting sexually transmitted diseases, and lied to [the Plaintiff] about having extramarital affairs and about having genital warts. This conduct was 'extreme and outrageous' and therefore sufficient to support [the Plaintiff's] claim for intentional infliction of emotional distress.

*Rose Gonzalez v. Charles Moffitt,* No. 97–4184, 1999 WL 220126, *2 (6th Cir.1999), *citing Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 6 Ohio St.3d 369, 453 N.E.2d 666, 667 (1983).

On September 22, 1997, the Defendant filed for relief under Chapter 7 of the United States Bankruptcy Code, listing the Plaintiff as a creditor. This event, in turn, lead to the Plaintiff bringing the instant adversary complaint to have the One Hundred Seventy-five Thousand Dollars ($175,000.00) judgment deemed nondischargeable on the basis that the debt arose from willful and malicious conduct, and thus was in violation of § 523(a)(6).[2] In support of her Complaint, and through her Motion for Summary Judgment, the Plaintiff asserts that the verdict entered by the United States District Court operates to collaterally estop the Defendant from re-litigating in this Court, whether he acted willfully and maliciously. In opposition to this argument, the Defendant maintains that there was no actual finding by the District Court that he acted either willfully or maliciously. Specifically, the Defendant calls this Court's attention to the fact that the interrogatories submitted

---

**1.** HPV stands for Human Papilloma Virus, and is commonly referred to as genital warts. The only way to contact HPV is through sexual intercourse.

**2.** There is no real contention between the Parties that the One Hundred Thousand Dollars ($100,000.00) awarded to the Plaintiff for the Defendant's negligent conduct is a dischargeable debt.

to the jury in the District Court case, and as enumerated above, only made a finding that the Defendant's conduct was "willful or reckless," and not exclusively willful. Consequently, the Defendant maintains that in light of the recent Supreme Court decision of *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 975, 977, 140 L.Ed.2d 90, 92 (1998), such a finding in the District Court was insufficient, as a matter of law, to collaterally estop the Defendant from litigating in this Court whether his conduct toward the Plaintiff was willful and malicious for purposes of paragraph (6) of § 523(a).

### LAW

**11 U.S.C. § 523 Exceptions to Discharge**

Section 523(a)(6) of the Bankruptcy Code provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of the title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

### DISCUSSION

Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding. Thus, this matter is a core proceeding.

The Plaintiff's Complaint to Determine the Dischargeability of the Defendant's Debt comes before the Court upon the Parties' Cross Motions for Summary Judgment. The Defendant, in his Motion for Summary Judgment, does not, however, actually contend that he is entitled to a judgment in his favor. Rather, a review of the Memorandum attached to the Defendant's Motion for Summary Judgment simply shows that the Defendant only contests the Plaintiff's entitlement to a judgment as a matter of law. (i.e., the Defendant desires to actually litigate the issue of whether he acted willfully and/or maliciously.)

Therefore, in light of this fact, this Court will simply treat the Defendant's Motion for Summary Judgment as an Objection to the Plaintiff's Motion for Summary Judgment.

Under the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7056, a party will prevail on a motion for summary judgment when, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); FED. R. CIV. P. 56(c). In order to prevail, the movant must demonstrate all the elements of the cause of action, but once that burden is established, the opposing party may not merely rest upon their pleadings. *R.E. Cruise, Inc. v. Bruggeman*, 508 F.2d 415, 416 (6th Cir. 1975). Instead, upon the moving party meeting their burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must, however, be viewed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also In re Bell*, 181 B.R. 311 (Bankr.N.D.Ohio 1995).

In the Plaintiff's Motion for Summary Judgment, the Plaintiff contends that the Debtor is collaterally estopped by the Judgment of the United States District Court, which was subsequently affirmed by the United States Court of Appeals for the Sixth Circuit, from contesting the findings of fact that give rise to the assertion that Defendant's claim is nondischargeable under § 523(a)(6). The Defendant, however, asserts that collateral estoppel is not

applicable because the findings made by the District Court jury were insufficient, as a matter of law, to warrant invoking the collateral estoppel doctrine.

■■■ Collateral estoppel, which is also known as issue preclusion, prevents the same parties or their privies from re-litigating facts and issues in a later suit that were fully litigated in a prior suit. *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (1994). It is clear that collateral estoppel principles apply to bankruptcy proceedings and can be used in a nondischargeability action to prevent re-litigation of issues that were already decided in a previous judicial proceeding. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). When applying the doctrine of collateral estoppel from a federal diversity action in which Ohio law was employed, to a nondischargeability proceeding under § 523(a), the following elements, at a minimum, must be established:[3]

(1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;

(2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment;

(3) The issue in the present suit must have been identical to the issue involved in the prior suit.

*Wilcox v. Wilcox (In re Wilcox)*, 229 B.R. 411, 415–16 (Bankr.N.D.Ohio.1998) *citing Cashelmara Villas Ltd. Partnership v. DiBenedetto*, 87 Ohio App.3d 809, 813–14, 623 N.E.2d 213 (1993). In the instant case, the Defendant contests the Plaintiff's compliance with the third prong of the above test; consequently, the Court's analysis will be limited to addressing this element.

■■■ The third element of Ohio's collateral estoppel test, as stated above, requires that the issue involved in the present litigation must have been identical to the issue involved in the prior suit. In a dischargeability action, this generally means that if the factual issues in the first proceeding were determined "using standards identical to those in the dischargeability proceedings, then collateral estoppel ... [will] bar re-litigation of those issues in the bankruptcy court." *Spilman v. Harley*, 656 F.2d 224, 226 (1981); *see also Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In the instant case, conducting such an analysis necessarily entails comparing the findings of fact made in the District Court case against the interpretations given to the terms "willful" and "malicious" under 11 U.S.C. § 523(a)(6).

■■■ The Supreme Court of the United States, in the case of *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 975, 977, 140 L.Ed.2d 90, 92 (1998), recently held that in order for an act to be consid-

---

**3.** These requirements are, in relevant part, Ohio's rules on collateral estoppel. It should be pointed out, however, that case law is currently unsettled as to whether federal or state law must be applied when determining the collateral estoppel effect of a federal court judgment that is based upon diversity jurisdiction. *See In re Air Crash at Detroit Metropolitan Airport*, 776 F.Supp. 316, 319–24 (E.D.Mich.1991) (providing an excellent analysis of the issue, and eventually concluding that federal law should be applied). In fact, the great weight of authority points toward applying federal law. 17 JAMES WM MOORE. MOORE'S FEDERAL PRACTICE § 124.07[6][b] (3rd ed.1997). Notwithstanding, this Court need not decide this issue as the only significant difference between Ohio rules on collateral estoppel versus the federal rules on collateral estoppel is Ohio's requirement of mutuality between the Parties, and in this case, of course, mutuality is not at issue. *See Central Transport Inc. v. Four Phase Systems, Inc.*, 936 F.2d 256, 259 (6th Cir.1991) (holding that under federal law collateral estoppel encompasses the following elements: (1) the issue precluded must be the same one involved in the prior proceeding; (2) the issue must actually have been litigated in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; and (4) the prior forum must have provided the party against whom estoppel is asserted a full and fair opportunity to litigate the issue.)

ered willful under § 523(a)(6), the debtor must have actually intended to injure either the creditor or the creditor's property.[4] Stated in another way, the *Kawaauhau* decision stands for the proposition that for an action to be considered "willful" under § 523(a)(6), a debtor must not only intend the act itself, but must also intend the consequences of that act. As a result, since the *Kawaauhau* decision it is clear that acts which are merely "reckless" in nature are not excepted from a bankruptcy discharge under § 523(a)(6),[5] and it is in accordance with this maxim by which the Defendant maintains that the Plaintiff's Motion for Summary Judgment should be denied. Specifically, the Defendant asserts that since the interrogatories submitted to the jury in the District Court case inquired into whether the Defendant acted intentionally *"or"* recklessly, the jury, in responding to the question in the affirmative, could have simply been finding that the Defendant's actions were solely reckless. As a consequence, the Defendant maintains this Court cannot find that, as a matter of law, he acted willfully for purposes of applying the collateral estoppel doctrine to § 523(a)(6).

This Court, however, after closely examining the record of this case, disagrees that no specific finding was made by the District Court jury that the Defendant acted intentionally. This supposition is primarily based upon the holding made in the Defendant's appeal, whereby the Sixth Circuit Court of Appeals, after reviewing the evidence supporting the Plaintiff's claim for reckless or intentional infliction of emotional distress, found, after categorizing the Defendant's

conduct as "extreme and outrageous," that the record contained ample evidence that the Defendant's conduct was sufficient to support the Plaintiff's claim for "intentional" infliction of emotional distress. In addition, even assuming arguendo that collateral estoppel is not applicable to the issue of the Defendant's "willful" conduct, the Court, after reviewing the evidence it has before it, finds that as a matter of law the Defendant's conduct was "willful" for purposes of § 523(a)(6). The Court, in making this decision, appreciates that generally state of mind issues, such as whether a person acted willfully, should not be disposed of on motions for summary judgment. *Bilandzic v. Fishman (In re Fishman)*, 215 B.R. 733, 735 (Bankr.E.D.Ark. 1997). The Court, however, also recognizes that under paragraph (a)(6) of § 523, a person may be deemed to have acted willfully not only when that person acts with the intent to cause injury, but also when that person is substantially certain that an injury will occur,[6] and in accordance therewith, the undisputed facts of this case lead this Court to but one conclusion: The Defendant, by having knowledge and lying to the Plaintiff about his genital warts, and thereafter willfully engaging in unprotected sexual intercourse with the Plaintiff, intentionally and willfully caused injury to the Plaintiff for purposes of § 523(a)(6).

Notwithstanding, merely because a debtor willfully causes an injury to a person or their property, does not automatically denote that a debt arising from that injury is nondischargeable under § 523(a)(6). Instead, for a debt to be held

---

**4.** Specifically, the Supreme Court in *Kawaauhau* stated that "[t]he word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." 118 S.Ct. at 977.

**5.** *See, e.g., First American Title Ins. Co. v. Lett (In re Lett)*, 238 B.R. 167, 189 (Bankr. W.D.Mo.1999)

**6.** *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir.1999); *see also Grange Mutual Casualty Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 908 (Bankr. N.D.Ohio 1998) (providing an in depth analysis of the willful requirement under § 523(a)(6) in light of the *Kawaauhau* case).

nondischargeable pursuant to § 523(a)(6), the debtor must have acted both willfully and maliciously. *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 463 (6th Cir.1999) ("holding the absence of either the willful or malicious requirement from § 523(a)(6) creates a dischargeable debt").

 Under § 523(a)(6), a person is deemed to have acted maliciously when that person acts in conscious disregard of their duties or without just cause or excuse. *See, e.g., Mega Enters., Inc. v. Lahiri (In re Lahiri),* 225 B.R. 582, 587 (Bankr. E.D.Pa.1998). Thus, for collateral estoppel to apply in the instant case, this Court must find that the District Court jury made a finding against the Defendant which is essentially identical to the foregoing definition of malice.

In the interrogatories submitted to the District Court jury, it was determined that the Defendant acted "intentionally," or at a minimum acted "with conscious disregard," in causing emotional distress to the Plaintiff. Upon examining this finding, in relationship to the definition of malice under § 523(a)(6), this Court concludes that the two standards are nearly identical. Accordingly, the Court holds that the Plaintiff has met her burden in establishing that the third prong of the previously enumerated collateral estoppel test is satisfied, and thus summary judgment against the Defendant is appropriate as to the application of collateral estoppel vis-a-vis the issue of whether the Defendant acted maliciously in the instant adversary proceeding. In addition, even again assuming arguendo that the doctrine of collateral estoppel is not applicable to the issue of the Defendant's malicious conduct, the Court for the reason previously expounded under this Court's analysis pertaining to the Defendant's willful conduct, finds that the Defendant acted maliciously for purposes of § 523(a)(6).

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Plaintiff's Motion for Summary Judgment be, and is hereby, GRANTED; and that the Defendant's Motion for Summary Judgment be, and is hereby, DENIED.

It is **FURTHER ORDERED** that the debt incurred by the Defendant to the Plaintiff in the amount of One Hundred Seventy-five Thousand Dollars ($175,-000.00) as a result of a prepetition judgment entered by the United States District Court for the North District of Ohio, Eastern Division, in case number 3:96 CV 7359, be, and is hereby, determined to be a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6).