**In re Timothy Scott MAY, Debtor.**

**John E. Sliva, Plaintiff,**

**v.**

**Timothy Scott May, Defendant.**

**Bankruptcy No. 04–3099.**
**Adversary No. 04–30350.**

United States Bankruptcy Court,
N.D. Ohio.

Dec. 14, 2004.

Steven L. Diller, Van Wert, OH, for debtor.

John E. Sliva, Saginaw, MI.

Elizabeth J. Schuller, UAW–Ford/GM Legal Services Plan, Defiance, OH, for plaintiff.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Plaintiff's Motion for Partial Summary Judgment and the Defendant's Response thereto together with the Defendant's Cross Motion for Summary Judgment. This Court has now had the opportunity to review the arguments of counsel, the exhibits as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's Partial Motion for Summary Judgment should be Granted; and that the Defendant's Motion for Summary Judgment should be Denied.

## FACTS

The Defendant, Timothy Scott May, is a debtor in bankruptcy, having voluntarily sought the protections of this Court through the filing of a petition under Chapter 7 of the United States Bankruptcy Code. The Plaintiff, John E. Sliva, is the holder of a prepetition state-court judgment, entered by default, against the Defendant in the amount of $6,082.07. The circumstances giving rise to this judgment stem from the Defendant's alleged failure to "meet the specific terms" of a contract by which he was to construct a pole building for the Plaintiff. (Doc. No. 30, at pg. 2).

Through the instant adversary proceeding, the Plaintiff seeks a determination that the claim he holds by virtue of the default judgment is not subject to the protections of the bankruptcy discharge, relying on two statutory exceptions to dischargeability: § 523(a)(2)(A), for fraudulent conduct; and § 523(a)(4), for defalcation while acting in a fiduciary capacity, embezzlement or larceny. On these exceptions to discharge, the Plaintiff's partial motion for summary judgment focuses entirely on the defalcation exception to dischargeability as set forth in § 523(a)(4). For this purpose, the Defendant, based upon prior precedent rendered by the Sixth Circuit Court of Appeals and then later this Court,[1] does not contest the position that any liability he has owing to the Plaintiff is, in fact, a nondischargeable debt under § 523(a)(4). Instead, in filing his cross motion for summary judgment, the Defendant argues that he fully performed according to the terms of the Parties' contract, incurring a deficiency in the process, and therefore he has no actual liability to the Plaintiff. (Doc. No. 30, at pg. 3–4).

## DISCUSSION

The instant case is brought to determine the dischargeability of a debt. Under 28 U.S.C. § 157(b)(2)(I), this type of action is deemed a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders and judgments. As recently set forth, however, the issue of dischargeability has already been settled, with this Court instead simply being asked to determine the amount, if any, of the nondischargeable

---

1. *Carlisle Cashway, Inc. v. Johnson (In re Johnson),* 691 F.2d 249, 251 (6th Cir.1982); *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.),* 760 F.2d 121 (6th Cir.1985); *R.E. America, Inc. v. Garver (In re Garver),* 116 F.3d 176 (6th Cir. 1997); *Ronk v. Maresh (In re Maresh),* 277 B.R. 339 (Bankr.N.D.Ohio 2001); *MPC CashWay Lumber Co. v. Collins (In re Collins),* 266 B.R. 123 (Bankr.N.D.Ohio 2000).

obligation. In seeking such a determination, the Defendant has, in essence, raised an affirmative defense, relying on evidence not previously submitted to the state court for consideration.

Like a determination as to the dischargeability of a particular debt, one of the primary functions of the bankruptcy process is to administer claims against a debtor's estate. To this end, bankruptcy courts are conferred with the authority to determine the "allowance or disallowance of claims against the estate[.]" 28 U.S.C. § 157(b)(2)(B). In the dischargeability context, however, the claims allowance process is not directly implicated. This concern has lead some courts to hold that in such a context there is no authority to determine the amount of a creditor's claim;[2] the Sixth Circuit, however, has strongly indicated to the contrary, stating, in relevant part:

> This Court recognized that a suit by a third party creditor ... against the debtor (and thus the bankruptcy estate), is a 'core proceeding' under 28 U.S.C. § 157(b)(2)(B). As such, the bankruptcy court has jurisdiction to adjudge the validity and amount of a claim together with its dischargeability.
>
> Because a party properly before a court of equity subjects himself to all the consequences that attach to an appearance, the amount of [the] liability was properly determined by the Bankruptcy court.

*Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965–66 (6th Cir.1993), *citing Atassi v. McLaren (In re McLaren)*, 990 F.2d 850, 854 (6th Cir.1993). Yet, no matter the context, the authority of a court to determine the amount of a claim is not absolute. And here, based upon the Plaintiff's claim being previously liquidated in another judicial forum, a number of legal barriers exist to this Court adjudicating the merits of the Defendant's position. First and foremost among these barriers being the legal doctrine of preclusion.

 In its simplest form, the legal doctrine of preclusion prevents a party from collaterally attacking a prior judicial decision to which they were a party or a privy. The essence of the doctrine is that a litigant should not be burdened with relitigating an identical claim or issue with the same party. *Pesina v. Kreps (In re Kreps)*, 293 B.R. 719, 723 (Bankr.N.D.Ohio 2002). The doctrine of preclusion itself comes in two forms: res judicata, also known as claim preclusion; and collateral estoppel, also known as issue preclusion. The basic difference between these two doctrines is that res judicata necessarily involves the same cause of action, while collateral estoppel applies regardless as to any relationship with the prior cause of action.

 In opposition to the preclusive effect of the prior judgment rendered against him, the Defendant argues that "the entry of default judgment does not necessarily act as collateral estoppel ...." (Doc. No. 30, at pg. 3). And this Court is inclined to agree with this statement; in *Hinze v. Robinson (In re Robinson)*, this Court held that in the absence of other circumstances, the doctrine of collateral estoppel is generally not applicable when applied to a prior judgment entered by default. 242 B.R. 380, 386–87 (Bankr. N.D.Ohio 1999). The reason for this is simple: contrary to the doctrine's requirements, in most circumstances no issues are actually litigated when a default judgment is entered.

---

**2.** *See Porter Capital Corp. v. Hamilton (In re Hamilton)*, 282 B.R. 22 (Bankr.W.D.Okla. 2002) (listing cases).

However, when applied to Ohio law,— which this Court is bound to follow given that the underlying judgment was rendered in an Ohio state court [3]—it is not the doctrine of collateral estoppel which is at issue here. Instead, when as here the underlying dispute involves a breach of contract, Ohio law holds that, "all the damages ... arising from such breach of the contract, become merged into such judgment." *Catawba West, Inc. v. Domo*, 1993 WL 155633 *2 (Ohio App. 6th Dist.1993), *citing Cockley v. Brucker*, 54 Ohio St. 214, 227, 44 N.E. 590 (1896). It therefore follows in this matter that when applied to the preclusion doctrines, the damages awarded to the Plaintiff by the state court cannot be viewed as an "issue" decided by the state court—thus ruling out the applicability of the collateral estoppel doctrine—but must instead be viewed as a part of the prior "claim" decided in the state court, thereby making the doctrine of res judicata applicable. *Catawba West*, 1993 WL 155633 *2. When applied in the context of a default judgment—the existence of which goes to the heart of the Defendant's position—this difference is critical.

In explaining the doctrine of res judicata, the Ohio Supreme Court has stated: "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Holzemer v.*

*Urbanski*, 86 Ohio St.3d 129, 132, 712 N.E.2d 713 (1999), *quoting* Black's Law Dictionary (6th Ed.1990) 1305. As can be gleaned from this definition, there is no requirement, unlike the doctrine of collateral estoppel, that either the defendant have actually participated in the underlying litigation or that the merits of the case be addressed. Instead, the doctrine of res judicata simply looks to the nature of the prior claim, and whether the defendant was given a fair opportunity to participate in the litigation. Carrying then the facets of this doctrine to its logical end, Ohio law provide that, without more, the entry of a judgment by default does not provide a valid defense to the application of the doctrine of res judicata. *Federal Deposit Insurance Corp. v. Willoughby*, 19 Ohio App.3d 51, 53–54, 482 N.E.2d 1267, 1270 (1984); *Zaperach v. Beaver*, 6 Ohio App.3d 17, 451 N.E.2d 1249 (1982) (in the default judgment context, limiting the res judicata doctrine to the claims made in the complaint). Accordingly, in following Ohio law, the doctrine of res judicata bars this Court from reevaluating the damages awarded to the Plaintiff in state court despite the judgment being entered by default.

Besides the preclusion doctrine of res judicata, another barrier in conducting a reevaluation of the damages award to the Plaintiff by the state court comes from the doctrine known as Rooker–Feldman. This doctrine, which takes its name from two Supreme Court cases,[4] is, in its sim-

---

**3.** In citing 28 U.S.C. § 1738 as authority, the Sixth Circuit Court of Appeals stated that, the "effect of this statute is to impose on federal courts the obligation to give state court judgments the same effect as they have in the state in which they were rendered. In other words, if an individual is precluded from litigating a suit in a state court by the traditional principles of res judicata, he is similarly pre-

cluded from litigating the suit in federal court." *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 (6th Cir.1987), *quoting Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 557 (6th Cir.1983), *aff'd*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

**4.** *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*,

plest terms, a prohibition against a lower federal court entertaining a collateral attack on a state court decision. The doctrine itself, which is partially codified in 28 U.S.C. § 1257,[5] holds that only the Supreme Court of the United States has jurisdiction to hear appeals of decisions rendered by a state court. Overall then, the key question in a Rooker–Feldman analysis is whether the party bringing the claim is seeking what is, in substance, the appellate review of a state court decision. *Johnson v. Odom,* 901 F.Supp. 220, 223 (W.D.La.1995).

■■■■■■ Falling outside this orbit is an action or defense brought in a federal court which merely has the inadvertent effect of reversing a state court decision— by its very nature, federal law, given its supremacy over state law, may affect decisions rendered by a state court. When, however, the matter is "inextricably intertwined with the claim asserted in the prior state court proceeding," the doctrine of Rooker–Feldman is applicable, and will jurisdictionally bar the relitigation of the matter. *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516–17 (6th Cir.2004). Based, therefore, on these boundaries, the key question in a Rooker–Feldman analysis is this:

> is the federal [litigant] seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction

460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

**5.** This section provides, in pertinent part, that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a...statute of the United States is drawn in question or where the validity of a

and state law determines whether the defendant prevails under principles of preclusion.

*In re Singleton,* 230 B.R. at 537, *citing GASH Assocs. v. Village of Rosemont, Ill.,* 995 F.2d 726, 728 (7th Cir.1993).

■■■■ As applied here, the position put forth by the Defendant hinges on whether he fully performed his obligations under the terms of the Parties' contract, incurring a deficiency in the process, thereby giving him a valid defense against the Plaintiff's claim. However, whether brought in this forum or previously in the state court forum, the effect of this defense is the same: it extinguishes the Defendant's liability to the Plaintiff. Thus, the only conclusion that can be drawn is that the Defendant is simply seeking to set aside the judgment previously rendered against him; no independent and distinct claim is presented. Consequently, the Rooker–Feldman doctrine is, by definition applicable, and will therefore bar this Court from reevaluating the position put forth by the Defendant in his Motion for Summary Judgment.

Finally, even setting aside the applicability of the both Rooker–Feldman and res judicata doctrines, an additional concern supports declining to reach the merits of the defense put forth by the Defendant. In *Skinner v. Lesh (In re Lesh),* this Court, in addressing a similar matter wherein the defendant sought to have a judgment set aside under Rule 60(b) of Ohio's Rules on Civil Procedure, observed

statute of any State is drawn in question on the grounds of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution...or statutes of, or any commission held or authority exercised under, the United States."

that: "basic principles of federalism, comity, and the premise that state courts are not inferior to federal courts, dictate that valid state court judgments are not generally to be disturbed by any federal court." 253 B.R. 849, 853 (Bankr.N.D.Ohio 2000). In this matter, however, the Defendant has not advanced and the Court cannot discern any compelling reason which would justify disturbing the judgment previously entered against the Defendant. Important in this regard, this is a no-asset bankruptcy case. Consequently, with the issue of dischargeability already decided, no substantive bankruptcy purpose would be served by addressing the merits of the Defendant's position.

 Yet, as a final word, also applicable from the *In re Lesh* decision is what is normally the proper remedy for a debtor who feels that a state court judgment was improperly rendered: "if a litigant feels that they have been aggrieved by an improper state court decision, their proper method of recourse is to seek redress through the state court judicial system." *Id.* at 854, *citing In re Crowder,* 37 B.R. 53, 55 (Bankr.S.D.Fla.1984) (a debtor's remedy for an erroneous ruling by a state court is to appeal the decision to the appropriate state court, not a collateral attack on the state court judgment in bankruptcy court). For example, a debtor could appeal or bring a motion to have the judgment modified or set aside.

In summation, the Court finds that under 11 U.S.C. § 523(a)(4), the obligation owed by the Defendant to the Plaintiff is a nondischargeable debt. As for the amount of that debt, the Court, for the reasons fully discussed in this Decision, will not disturb the judgment amount liquidated by the state court. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

*ORDERED* that the Partial Motion for Summary Judgment of the Plaintiff, John E. Sliva, be, and is hereby, GRANTED; and that the Motion for Summary Judgment of the Defendant, Timothy Scott May, be, and is hereby, DENIED.

It is *FURTHER ORDERED* that, pursuant to 11 U.S.C. § 523(a)(4), the judgment rendered in favor of the Plaintiff, John E. Sliva, and against the Defendant, Timothy Scott May, in Case No. 03–4283CV2, be, and is hereby, determined to be a NONDISCHARGEABLE DEBT.